UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY JO PAUL,

     Plaintiff,       Case No. 2:17-cv-12391
              District Judge Sean F. Cox
v.              Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) AND AFFIRM THE DECISION OF THE COMMISSIONER

**I.**  **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16),

and **AFFIRM** the Commissioner's decision.

**II.**  **REPORT**

    Plaintiff, Amy Jo Paul, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

(DI) benefits and supplemental security income (SSI) benefits. This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 14), the Commissioner's cross-motion for summary judgment (DE 16), Plaintiff's reply brief (DE 121) and the administrative record (DE 11).

### A.   Background

Plaintiff filed her applications for DI and SSI benefits on August 29, 2013, alleging that she has been disabled since November 29, 2011.  (R. at 163-70.) Plaintiff's applications were denied on December 19, 2013, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 90-103, 126-27.) ALJ Davida H. Isaacs held a hearing on June 25, 2015, at which Plaintiff was represented by counsel.  (R. at 31-89.) The ALJ considered all of the evidence and, on August 28, 2015, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15-30.)  On September 16, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 4-9.)  Thus, ALJ Isaacs's decision became the Commissioner's final decision.  On June 28, 2017, the Appeals Council granted Plaintiff's request for more time to file a civil action.  (R. at 1-3.)

Plaintiff then timely commenced the instant action on July 25, 2017.

### B.   Plaintiff's Medical History

The administrative record contains approximately 404 pages of medical records (Exhibits 1F through 10F) spanning the period from September 27, 2011

through June 24, 2015, all of which were available to the ALJ at the time of her August 28, 2015 decision.  The medical records include hospital records, treatment notes and opinions from Plaintiff's treaters, including Dr. Sachin Nagarkar and Nurse Practitioner Melissa Murtha. (R. at 237-641), and the administrative record also contains a State agency reviewing medical source opinion by Judy Strait, Psy.D., L.P., dated December 17, 2013.  (R. at 88-92.) These records will be discussed in detail, as necessary, below.

### C.    The Hearing and Administrative Decision

Plaintiff, who was represented by counsel, and vocational expert Toni M. McFarland testified at the June 25, 2015 hearing before ALJ Isaacs.  On August 28, 2015, the ALJ issued an "unfavorable" decision.  Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 29, 2011, the alleged onset date.  (R. at 17-18.)  At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:  cerebral infarction, asthma, and depression with post-traumatic stress disorder.  However Plaintiff's complaints of migraines, back pain, and carpal tunnel syndrome, and the effects of obesity, were considered non-severe.  (R. at 18-19.)  At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 19-20.)  Prior

to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the

residual functional capacity ("RFC")[1] to:

> perform light work … except that after standing or walking for 30 minutes, the claimant must be permitted to sit for 10 minutes while remaining on-task. The claimant can never climb ladders, ropes or scaffolds. The claimant can no more than occasionally climb ramps and stairs, stoop, kneel, crouch or crawl. The claimant must avoid all commercial exposure to heat, dust, fumes, and other commercial irritants. The claimant is limited to simple, routine and repetitive tasks, with only occasional and superficial interaction [with] coworkers and the public.

(R. at 20-24.)  At **Step 4**, the ALJ found that Plaintiff is not capable of performing

her past relevant work.  (R. at 24.) The ALJ proceeded to find at **Step 5** that,

considering Plaintiff's age, education, work experience, and RFC, there are jobs

that exist in significant numbers in the national economy that Plaintiff could

perform.  (R. at 25-26.)  The ALJ therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, since November 29, 2011,

the alleged onset date, through the date of the decision.  (R. at 26.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

4

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the

5

claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*,

582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

In her motion for summary judgment, Plaintiff asserts five claims of error: (1) the ALJ failed to give proper controlling weight to Plaintiff's psychiatrist, Dr. Nagarkar; (2) the ALJ's finding that Plaintiff does not have a severe back impairment is not supported by substantial evidence; (3) the ALJ failed to properly consider the weight given to Plaintiff's treating nurse practitioner Melissa Murtha; (4) the ALJ's RFC determination did not properly account for limitations with regard to concentration and pace; and (5) the ALJ's analysis improperly considered gaps in Plaintiff's mental health treatment. (DE 14.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 16.)

### 1.    Dr. Sachin Nagarkar's Opinion Evidence

Plaintiff complains that the ALJ improperly gave little weight to the medical source statement of her treating psychiatrist, Sachin Nagarkar, M.D. (DE 12 at 19-26.)  The Commissioner responds that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Nagarkar. (DE 16 at 6-15.)

### a.    Treating Source Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(b). The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

For claims filed before March 27, 2017, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F.

App'x 377, 384 (6th Cir. 2013).  The ALJ generally gives deference to the

opinions of a treating source "since these are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [a patient's] medical

impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

§ 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir.

2009). To qualify as a treating source, the physician must have an "ongoing

treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[2] *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give

a treating source's opinion controlling weight:

---

[2] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)). Nevertheless, the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimant's understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

agency's decision is applied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d
Cir. 1999).  The requirement also ensures that the ALJ applies the
treating physician rule and permits meaningful review of the ALJ's
application of the rule.  *See Halloran v. Barnhart*, 362 F.3d 28, 32-33
(2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

In essence, "opinions of a treating source … must be analyzed under a two-

step process, with care being taken not to conflate the steps."  *Cadle v. Comm'r of

Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013).

Initially, "the opinion must be examined to determine if it is entitled to controlling

weight" and "[o]nly if … the ALJ does not give controlling weight to the treating

physician's opinion is the opinion subjected to another analysis based on the

particulars of" 20 C.F.R. § 404.1527.  *Id.*

Moreover, the failure to discuss the requisite factors may constitute harmless

error: (1) if "a treating source's opinion is so patently deficient that the

Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the

opinion of the treating source or makes findings consistent with the opinion;" or

(3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the

procedural safeguard of reasons–even though she has not complied with the terms

of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.

2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.,*

11

No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

For the reasons stated below, I find that the ALJ's opinion gives good reasons for the weight given to the medical opinions at issue and that the Commissioner has met the goal of § 1527(c). *See Francis*, 414 F. App'x at 805. I also find that the opinion ''permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight" given to the physician's opinion. *See id.* (quoting *Friend*, 375 F. App'x at 550).

### b.   Dr. Sachin Nagarkar's Opinion

Dr. Nagarkar completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" regarding Plaintiff dated June 24, 2015, in which he indicated that Plaintiff was markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for an extended period, perform activities within a schedule (including maintaining regular attendance and being punctual within normal tolerances), complete a normal workday or workweek without interruption from psychologically based symptoms, and set realistic goals and make plans independently of others. (R. at 639-41.)[3] He also opined that Plaintiff would miss six days of work in a 30 day calendar month. (R. at 641.) The ALJ gave this opinion "little weight," explaining:

_____

[3] The statement defines "markedly limited" as "no useful ability to function in this area." (R. at 639.)

Dr. Nagarkar did not provide any basis for his opinions of such severe limitations, and the record provides no basis or support for his opinions either (7F/16-18, 10F). Despite a record that indicates the claimant has good insight and judgment, Dr. Nagarkar opined that the claimant is markedly limited in her ability to set realistic goals and plans.

(R. at 23.)

 Plaintiff complains that the ALJ improperly gave this opinion "little weight." She argues that the ALJ did not cite to any specific finding of Dr. Nagarkar that would be inconsistent with his restrictions, but instead only broadly referred to the majority of the doctor's records without indicating how they would be relevant to her findings. (DE 14 at 21.) Plaintiff contends that Dr. Nagarkar's records fully support those restrictions, and that the restrictions are consistent with other medical opinions and treatment notes of record. (*Id.* at 22-25.) Plaintiff also complains that the ALJ failed to provide analysis of the 404.1527 factors to explain the weight given to the doctor's findings. (*Id.* at 21-22.) In response, the Commissioner argues that Dr. Nagarkar's statement, consisting entirely of checkmarks, is not a medical opinion, and that the doctor was not a treating source because he only met with Plaintiff twice before rendering his statement. The Commissioner goes on to argue that substantial evidence supports the ALJ's decision to discount the medical source statement of Dr. Nagarkar. (DE 16 at 6-15.)

The Commissioner's arguments are persuasive, and I find that the ALJ gave sufficient reasons for giving Dr. Nagarkar's opinion "little weight." First, she found that "Dr. Nagarkar did not provide any basis for his opinions of such severe limitations[.]" (R. at 23.) Indeed, as the Commissioner argues in her motion, Dr. Nagarkar's statement consists entirely of checkmarks, devoid of any rationale or explanation for the limitations he imposed. (R. at 639-41.) Dr. Nagarkar does not identify any medical signs or clinical evidence supporting his statement and the marked limitations, and the ALJ properly discounted his opinion as being unsupported. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because [the doctor] failed to identify objective medical findings to support his opinion regarding [the plaintiff's] impairments, the ALJ did not err in discounting his opinion."). The Sixth Circuit has recognized that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citing *Friend*, 375 F. App'x at 551); *see also Shepard v. Comm'r of Soc. Sec.*, No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under *Hernandez*); *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017) (finding a medical

14

source statement that was in the "check-box format" was "an impotent addition to the record with little to no persuasive value," and that it was "immaterial" if there was certain evidence in the record consistent with the opinion "because the ALJ provided 'good reasons' for discounting his opinion and this Court may not reweigh the evidence).  And, as the Commissioner states, Dr. Nagarkar's impression of how many days Plaintiff would likely miss work because of psychiatric symptoms, again wholly unsupported by any record evidence, need not be considered a medical opinion entitled to controlling weight.  (DE 16 at 7-8, citing *Murray v. Comm'r of Soc. Sec.*, No. 1:10-cv-297, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011) ("A treating physician's estimate of how often a patient who is not working would likely be absent from work if [s]he had a job is not a medical opinion, and it is not entitled to any particular weight.").) *See also Valdes v. Comm'r of Soc. Sec.*, No. 1:08-cv-872, 2010 WL 911181, at *8 (W.D. Mich. Mar. 12, 2011) ("A treating physician's estimate of how often a patient who is not working would likely be absent from work if she had a job … is not a medical opinion, and it is not entitled to any particular weight, especially in cases such as this, where the doctor's statement provides no explanation regarding how the conclusion was reached, or any reference to the specific, objective medical evidence supporting it.").

Further, Dr. Nagarkar only met with Plaintiff two times prior to issuing his June 2015 statement: (1) a psychiatric evaluation in October 2014; and (2) a medication review in December 2014. (R. at 498-502, 639-41.) The Commissioner reasonably questions whether Dr. Nagarkar should be considered Plaintiff's treating psychiatrist, based on his limited treating relationship. (DE. 16 at 8-9, citing *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four month period is a treating source[.]").) In any event, Dr. Nagarkar's limited treatment records do not support his extreme limitations. In his October 2014 examination, Dr. Nagarkar noted:

> Amy is a 40-year-old lady who was casually dressed and adequately groomed. Her mood is depressed. Her affect is labile. Her speech is clear, coherent, and goal directed. No thought disorder noted. No psychotic or manic features noted. No suicidal or homicidal ideation noted. Insight and judgment are fair. Organic parameters are intact.

(R. at 501.) Dr. Nagarkar diagnosed Plaintiff with dysthymia, panic disorder without agoraphobia and generalized anxiety disorder, and assessed her with a GAF score of 50. (R. at 502.)[4] Again, in December 2014, Dr. Nagarkar stated the same diagnosis and similarly noted that:

---

[4] A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV-TR* at 34. A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social,

> Amy is casually dressed.  She was alert and oriented to all spheres.
> Her mood is depressed.  Her affect is congruent to mood.  Her speech
> is clear, coherent, and goal directed.  No thought disorder noted. No
> psychotic or manic features notes. No suicidal or homicidal ideation
> noted. Insight and judgment are fair. Organic parameters are fair.

(R. at 498.)

In response, Plaintiff asserts that because Dr. Nagarkar works at Saginaw

Psychological Services, he would have had access to other treater's notes in

addition to his own, including those of Sara Daugherty-Rosas, a limited licensed

psychologist (LLP).  (DE 21 at 3-4, citing R. at 491, 495, 496.)  However, giving

Plaintiff the benefit of the doubt that Dr. Nagarkar reviewed those records prior to

issuing his statement – even though it is conjecture to assume so – those records do

not support Dr. Nagarkar's extreme limitations and are consistent with the ALJ's

determination.  Those records note that Plaintiff had good social skills, a

cooperative and friendly attitude, appropriate affect, normal speech, relaxed and

calm motor activity, intact immediate and remote memory, intact judgment and

insight, and logical thoughts.  (R. at 493-94.)

---

occupational, or school functioning (e.g., few friends, conflicts with peers or
coworkers)." *Id.*  Nonetheless, the Sixth Circuit has noted that "the Commissioner
has declined to endorse the [Global Assessment Functioning] score for use in the
Social Security and [Supplemental Security Income] disability programs, and has
indicated that [Global Assessment Functioning] scores have no direct correlation to
the severity requirements of the mental disorders listings. Accordingly, we have
affirmed denials of disability benefits where applicants had Global Assessment
Functioning scores of 50 or lower." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x
411, 415 (6th Cir. 2006).

The ALJ also properly noted that the "record provides no basis or support for [Dr. Nagarkar's] opinions either[,]" explaining that ""[d]espite a record that indicates the claimant has good insight and judgment, Dr. Nagarkar opined that the claimant is markedly limited in her ability to set realistic goals and plans." (R. at 23, citing R. at 391, 493, 501.)  The mental status of examinations of Plaintiff in October 2012 and February 2014 both indicated that Plaintiff's insight and judgment were intact, her thought processes were logical and organized, and she presented with average intelligence.  (R. at 391-92, 493-94.) As the Commissioner properly notes, although Plaintiff contends that "intact" is not synonymous with "good," "intact" is the least restrictive descriptor available on the preprinted form. (See R. at 391, 493.)  The ALJ further noted that Plaintiff's May 2014 treatment notes indicated that her depression was stable (R. at 22, citing R. at 576), and contrary to Dr. Nagarkar's conclusion that Plaintiff had moderate limitations remembering short and simple instructions, the mental status examinations reflected that Plaintiff had intact immediate and remote memory.  (R. at 391, 493, 640.)

Plaintiff has at best identified conflicts in the evidence.  However, it is not for the Court to reweigh the evidence.  Accordingly, Plaintiff has failed to demonstrate that the ALJ erred in affording Dr. Nagarkar's opinion little weight. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding

that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion).

## 2.    The ALJ's Step 2 Finding

At Step 2 of the sequential evaluation process, it is the claimant's burden to demonstrate that she suffers from a severe impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). However, the Step 2 severity analysis is simply a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See e.g., Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457; *accord Dickey-Williams v. Comm'r of Soc. Sec.*, 975

19

F.Supp.2d 792, 822-23 (E.D. Mich. 2013) ("any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis") (citation omitted).

Turning to the instant matter, at Step 2 of her analysis, the ALJ determined that Plaintiff had the following severe impairments:  cerebral infarction, asthma, and depression with post-traumatic stress disorder.  (R. at 18-19.)  However, she found that a number of other conditions mentioned in Plaintiff's medical records do not cause more than minimal functional limitations and thus are classified as "nonsevere," including Plaintiff's complaints of back pain.  (*Id.*)  Specifically, with respect to Plaintiff's back pain, the ALJ stated in her Step 2 determination that:

> The claimant sustained a back injury before her alleged onset date; thoracic and lumbar spine MRIs noted lumbar spine facet hypertrophic changes and a thoracic herniated disc with spinal stenosis (1F/5).  However, her condition was noted as stable (1F/2, 3). While the claimant has sought out a pain clinic referral, it has been denied multiple times, and a neurosurgeon reported that her complaints and back did not require surgery (3F/15).  The claimant was also denied a MRI, and although the claimant complained of continuing pain, it seems the claimant was adequately treating her pain with Tylenol although she increased her dosage (3F/32). Additional treatment records reveal that the claimant felt well enough to engage in activities such as wrestling with her son, with no complaints of back pain (8F/39).

(R. at 18.)  The ALJ continued and thoroughly considered the entire record, expressly including Plaintiff's "severe impairments of cerebral infarction and

20

depression, as well as her non-severe impairments of carpal tunnel syndrome, back

pain and obesity," in reaching her RFC determination.  (R. at 23.)  This RFC

included limitations for a reduced range of light work, with a modified sit-stand

option, no climbing of ladders, ropes or scaffolds, occasional climbing of ramps

and stairs, and occasional stooping, kneeling, crouching or crawling.  (R. at 20-21.)

Plaintiff disagrees with the ALJ's finding that that her back pain was not a

severe impairment.  She cites to the results of her lumbar and thoracic MRIs

(which the ALJ expressly acknowledged (R. at 18, citing R. at 241)), but that

objective testing alone does not mandate any functional limitations beyond that

determined by the ALJ.  *See Brown v Comm'r of Soc. Sec.*, No. 12-14506, 2013

WL 6537980, at *16 (E.D. Mich. Nov. 18 2013) ("The MRI provided no

information about the functional effects of that impairment.").  Plaintiff also cites

to a few treatment notes indicating positive straight leg raising, reported spinal

tenderness, painful range of motion and restricted rotation (DE 14 at 27-28, citing

R. at 549, 607.)  But again, Plaintiff fails to demonstrate how these few objective

findings mandate functional limitations beyond that determined by the ALJ.

Plaintiff also complains that the ALJ uses the term "wrestling" to describe

Plaintiff's activity that led to her visit to the doctor on June 9, 2015, contending

that she was instead just "kidding around."  (DE 14 at 28.)  However, that is the

precise term the nurse practitioner used in the treatment note (See R. at 542 ("Was

wrestling with son and jammed left finger into son's arm 2 weeks ago.")), and the ALJ properly noted that in his findings.  The ALJ also properly noted that Plaintiff reported carrying a small child, which is inconsistent with restrictions due to back pain in addition to those set forth in Plaintiff's RFC.  (See R. at 24, citing R. at 621 (Plaintiff reported injuring her wrist when she "was at a haunted house and carrying a child in her arms when she tripped and put her left arm out to stabilize the fall").)  Finally, Plaintiff asserts that her treating nurse practitioner imposed additional lifting, standing and walking restrictions (DE 14 at 29, citing R. at 612). However, as described *infra*, the ALJ supportably discounted that opinion.

Accordingly, the ALJ considered and discussed the evidence pertaining to Plaintiff's complaints of back pain and found that it was a non-severe impairment. Because the ALJ found that Plaintiff had several severe impairments, and she considered Plaintiff's back pain at the remaining steps of the analysis, her failure to find this impairment severe at Step 2 does not, in and of itself, warrant remand. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("[E]ven if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of [the plaintiff's] impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless."); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (because the ALJ found the plaintiff had

22

severe impairments, "[t]his caused the ALJ to consider [the plaintiff's] severe and
nonsevere impairments in the remaining steps of the sequential analysis").

### 3.   Nurse Practitioner Melissa Murtha's Opinion

Plaintiff argues that the ALJ failed to properly consider the opinion of her
treating nurse practitioner, Melissa Murtha, that limited Plaintiff to occasionally
lifting less than ten pounds, standing and/or walking for less than two hours in an
eight-hour work day, no repetitive actions with her hands and arms, and no use of
foot or leg controls, and dismissed that opinion "without providing any rationale."
(DE 14 at 30-33.)  However, review of the ALJ's decision shows that she properly
considered the opinion of Ms. Murtha, and supplied ample rationale for her
assignment of little weight to that opinion, explaining:

> Ms. Murtha is not an "acceptable medical source" as defined within
> the meaning of the Regulations, although she does qualify as an "other
> source" as defined by 20 CFR 404.1513(d).  Under the Regulations,
> such reports and opinions are considered "other" evidence, of less
> probative value than information from "acceptable sources," i.e.,
> licensed physicians (20 CFR §404.1513).   While Ms. Murtha
> diagnoses the claimant with several impairments, a diagnosis is
> beyond her expertise and purview.  Despite no evidence in the record
> that the claimant needs an assistive device to walk or has longstanding
> difficulties with ambulation, Ms. Murtha opined that the claimant
> could not operate foot controls (9F/65).  While the record indicates, as
> previously discussed, that the claimant maintains full strength in all
> her extremities, Mr. Murtha opined that the claimant can conduct no
> repetitive actions (9F/65, 82).  Further, Ms. Murtha assigned lifting
> and walking limitations, such as no lifting of more than 10 lbs., that
> are inconsistent with a record that indicates the claimant was capable
> of carrying small children and wrestling with her son (8F/39, 9F/74).

>As a whole, the limitations given by Ms. Murtha are not supported. For these reasons, little weight is given to the opinion of Ms. Murtha.

(R. at 23-24.)

Plaintiff does not dispute that Ms. Murtha is considered an "other source," and thus her opinion is entitled to "consideration" but not controlling weight, but claims that the ALJ erroneously discounted her opinion because her diagnoses were beyond her expertise and purview. Plaintiff also asserts that Ms. Murtha's diagnosis of a stroke was confirmed by a neurologist, Dr. Dardas, and her diagnosis of a severe back impairment was based on "abnormal MRI findings," which were "acknowledged by the ALJ," and on Dr. Akbar's "opinion" of severe degenerative changes in the lumbar spine and herniated disc and spinal stenosis in the thoracic spine. (DE 14 at 32, citing R. at 18, 241, 584.) However, Dr. Akbar reviewed Plaintiff's MRI results and provided his impression of those exams, but did not render a diagnosis. (R. at 240-41.) Moreover, as explained by the ALJ, regardless of what Ms. Murtha's opinion was based upon, as an "other source," she was not qualified to opine that the objective medical testing, like the MRIs, translated into the functional limitations she imposed. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (medical diagnoses are beyond the competence of other source witnesses and therefore do not constitute competent evidence); 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."); *see also Brown*,

24

2013 WL 6537980, at *16 (MRI exams merely provide objective medical findings, they do not "provide[] … information about the functional effects of [any] impairment").

The ALJ further supported her finding assigning Ms. Murtha's opinion "little weight" by pointing out that there was no evidence in the record that Plaintiff needed an assistive device to walk or that she has longstanding trouble with ambulation to support Ms. Murtha's opinion that Plaintiff could not operate foot controls.  Further, contrary to Ms. Murtha's opinion that Plaintiff can conduct no repetitive actions, the record reflects that she maintains full strength in all extremities.  (R. at 23, citing R. at 612, 629.)  In addition, Ms. Murtha's lifting limitations are inconsistent with record evidence that Plaintiff admitted that she is capable of carrying small children and wrestling with her son.  (R. at 23-24, citing R. at 542, 621.)  The record evidence supports the ALJ's finding, consistently reflecting Plaintiff's normal gait and station, full strength in all extremities, and frequently reflecting normal range of motion. (*See, e.g*., R. at 273, 306, 308, 312, 320, 336, 346, 409, 467, 472, 477, 555, 578, 594, 623.)

Accordingly, the ALJ properly considered Ms. Murtha's opinion and her finding limiting Ms. Murtha's opinion to little weight is supported by substantial evidence.  While Plaintiff points to evidence in the record she believes supports a more restricted level of functioning (DE 14 at 32-33), the ALJ properly supported

25

her decision.  Plaintiff is thus essentially asking the Court to reweigh the evidence, which it cannot do.  *See Webb v. Comm'r of Soc. Sec.*, No. 2:16-CV-10015, 2017 WL 1164708, at *8 (E.D. Mich. Mar. 29, 2017).  Therefore, Plaintiff's claim of error should be denied.

### 4.     The RFC properly accounts for moderate limitations in concentration, persistence and pace

The ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence and pace, and thus limited her to simple, routine and repetitive tasks with only occasional and superficial interaction with coworkers and the public.  (R. at 23.)  Plaintiff complains that the ALJ's RFC does not properly account for moderate limitations in restrictions on pace, such as restrictions on production or piece work or the need to take extra breaks or have time off task. (DE 14 at 34, citing *Edwards v. Barnhart*, 383 F.Supp.2d 920, 931 (E.D. Mich. 2005) and *Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849-50 (E.D. Mich. 2007).)

However, as the Commissioner points out, this District has more recently concluded that a limitation to unskilled, routine work can be adequate to address a moderate limitation in concentration, persistence and pace.  (DE 16 at 20-21, citing *Smith v. Comm'r of Soc. Sec.*, No. 13-10862, 2013 WL 6094745, at *8 (E.D. Mich. Nov. 20, 2013).)  Instead, this Court has consistently emphasized the need for a case-by-case analysis when assessing whether a limitation to unskilled work

26

adequately accounts for a moderate deficiency in concentration and pace, as explained and comprehensively analyzed in *Bohn-Morton v. Commissioner of Social Security*, 389 F.Supp.2d 804, 805-07 (E.D. Mich. 2005) (Rosen, J.), emphasizing the need for a case-by-case analysis and concluding that a limitation to unskilled work adequately accounts for a moderate deficiency in CPP. *See also, e.g., Smith*, 2013 WL 6094745, at *8 ("[T]here is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitations of 'unskilled, routine work' but excludes a moderate limitation in concentration.  Rather, this Court must looks at the record as a whole and determine if substantial evidence supports the ALJ's RFC."); *Schalk v. Comm'r of Soc. Sec.*, No. 10-CV-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011) (concluding that there is "no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration" and holding that, instead, the "Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (noting that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work").

Review of the record as a whole here supports that ALJ's RFC. Mental exams reflect that Plaintiff's recent and remote memory were intact, her insight and judgment were intact, her thought processes were logical and organized, and her intelligence was average.  (R. at 391, 401, 493.) *See Smith*, 2013 WL 6094745, at *8 (finding limitations to "simple, routine and repetitive work" sufficient where the record evidence reflected that plaintiff's "memory, orientation, stream of thought, perception, and consciousness were normal; general knowledge was above average; and, insight and judgment were good").  Plaintiff failed to cite to any record evidence in her very brief argument in her motion in support of more restrictive limitations.  Accordingly, substantial evidence in the record supports the ALJ's RFC to limit Plaintiff to simple, routine and repetitive tasks, with only occasional and superficial interaction with coworkers and the public, and Plaintiff's claim of error should be denied.

### 5. Substantial evidence supports the ALJ's findings of gaps in Plaintiff's mental health treatment

Plaintiff complains that the ALJ improperly "chastised" her for gaps in her mental health treatment.  According to Plaintiff, the ALJ found that her gaps in treatment were due to her non-compliance, and ignored the statement of her DHS caseworker, Ms. Powell, that Plaintiff periodically lost her Medicaid coverage, which Plaintiff asserts caused difficulties in obtaining treatment.  (DE 14 at 35-36.)

28

The ALJ reviewed the record evidence and noted, in part, that Plaintiff had "intermittent treatment for her depression with post-traumatic stress disorder, and does not always take her medications as directed," and concluded that this evidence tended to undercut her allegations of disabling mental health issues.  (R. at 22, citing R. at 272, 275, 381-82, 399, 480, 495.)  As the Commissioner correctly notes, Plaintiff's medication non-compliance is noted in her treatment records, which demonstrate that her choice not to take her medication was not tied to loss of insurance.  (DE 16 at 22-23, citing R. at 272, 399, 480.) The ALJ also found that Plaintiff had gaps in her mental health treatment, including in 2011 and 2012.  (R. at 22, citing R. at 275, 381-82, 495.)  The ALJ noted that Plaintiff's treatment records reflect that her symptoms improved when she was compliant with her medication. (R. at 22, citing R. at 294, 304, 397, 570, 576.)

Plaintiff points to Ms. Powell's letter stating that Plaintiff would periodically lose her insurance.  However, she fails to present any evidence that her gaps in treatment were due to a loss in insurance, while the Commissioner cites to record evidence demonstrating that, contrary to Plaintiff's claim, she had Medicaid Molina coverage during the October 2011 through January 2013 time period in which she had gaps in treatment. (DE 16 at 23, citing R. at 219.)[5]  Plaintiff has

---

[5] Plaintiff asserts in her reply brief that the ALJ erred by not expressly discussing Ms. Powell's letter in his opinion.  However, this letter from her case worker is considered "other source" evidence, and while the ALJ was required to consider

failed to meet her burden to demonstrate that the ALJ impermissibly considered this record evidence demonstrating medication non-compliance and gaps in treatment. *See Hamlin v. Comm'r of Soc. Sec.*, No. 96-3243, 1996 WL 729287, at *2 (6th Cir. Dec. 17, 1996) (noting that "gaps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then"). The ALJ was permitted to consider Plaintiff's treatment and medication compliance as factors in her credibility assessment, and Plaintiff's claim of error should be denied. *See Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 846 (6th Cir. 2004) (affirming consideration of gap in treatment as one factor in the ALJ's credibility analysis).

## F. Conclusion

Accordingly, for the reasons set forth above, the Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner's decision.

## III. PROCEDURE ON OBJECTIONS

---

that letter, he was not required to discuss it in his opinion. See SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Because, as explained above, the letter does not provide evidence that the gaps in treatment noted by the ALJ were caused by lack of insurance, the ALJ's failure to discuss that letter does not constitute reversible error.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 24, 2018          s/*Anthony P. Patti*
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 24, 2018, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti